GREEN, J.
delivered the opinion of the court.
It is admitted by the counsel for the plaintiffs, that at the common law this action could riot be sustained; but it is insisted, that by the act of 1820, ch. 25, sec. 1, this remedy is given.
This brings us to consider of the construction which should be placed upon that act. It pro-vides, that “It shall be lawful for any person or persons who are the endorsee or endorsees of any foreign or inland bill of exchange, promissory note, or writing obligatory, to commence and prosecute an action, for principal, interest and charges of protest, if any there be, against all, or any two or more of the endorsors jointly; or at his election, prosecute an action of debt, jointly, against the maker or makers of any such writing obligatory; and any one or more of the endorsers thereof, and judgment shall and may be given accordingly, and whenever a suit may or shall be brought jointly against all, or any two or more of the endorsers of a bill of exchange, promissory note, or writing obligatory, and the plaintiff shall be entitled to recover against one or more, but not against all who are thus jointly sued, the discharge of one or more, shall not prevent a verdict and judgment from being rendered against him, her or them, who may be liable.’'’
In the section above quoted, the joint action of debt is expressly given against the makers and endorsers of a “writing obligatory;” and the plaintiffs insist that this provision was intended to extend also to the drawer and endorsers of a bill of exchange, and to the maker and endorsers of a promissory note. This will depend upon the sense in which the words “writing obligatory” are 'here used. The words “writing obligatory,” techni *351 «ally, mean a written contract, under seal. But it is in- . i , , , , , .... sisted, that these words have a popular sense, m which they moan any contract in writing by which a party is bound to pay money; that in this sense are included bills of exchange and promissory notes, as well as sealed instruments; and that in this sense the legislature used them in the act under consideration.
It is true, that a technical expression does sometimes come into common use, in a different sense from its technical meaning; and if such expression be used by a legislature, and it is apparent that it was used in the popular sense, the courts, in construing the act, must give it that sense. 17 Mass. Rep. 122.
But the first question is, has the phrase “writing obligatory,” come into common use, in a sense different from its technical one? The truth is, the expression is rarely used, even by the profession, except in pleading, and then always as signifying a writing under seal. Lawyers themselves, in their common conversation, and in their speeches at the bar, are much more frequently heard, in reference to a writing under seal for the payment of money, to call it a “note,” than to say “writing obligatory.” So far, therefore, from the phrase “writing obligatory” having acquired a popular sense, as contended for, it is scarcely ever us,ed, except in pleading and in legislation, when the writers intend the utmost precision of language. As, therefore, the phrase “writing obligatory” must be understood, as here used, to mean a written contract, under seal, the next inquiry is, whether, as bills of exchange and promissory notes are not included within the letter, are they within the spirit of the enactment? It is the business of the court to ascertain the intention of the legislature, and to carry that intention into effect. But we are to derive our knowledge of that intention from the words they have used to express it. It is true, if the language is ambiguous, and capable of different meanings, then we must resort to extraneous *352 considerations. In such case, a knowledge of the old saw, “the mischief, and the remedy proposed,” will be a pretty sure guide. But when the legislature use plain and precise expressions, capable of only one sensible meaning, their language must be understood in its obvious sense. To supply a provision which we may suppose, from other considerations, the legislature had in view, and which would have been inserted, if the mind of the draftsman had been directed to it when penning the statute, but which he has not used words in the statute to express, would be to make, and not to expound, the law.
In this statute, the legislature has used precise and well-defined expressions to convey its ideas. Technical words are used manifestly in a technical sense, and in a manner which evinces they were well understood. The words “writing obligatory” cannot, therefore, be understood as including bills of exchange and promissory notes; and consequently, a joint action cannot be prosecuted against and endorsers of such a note or bill of exchange.
It may be questioned too, whether this provision was not omitted in relation to bills of exchange and promissory notes, by design. The latter clause of this section again enumerates all these description of instruments which had been mentioned in the first part, and against the endorsers of which, a joint action had been given, and provides, that the discharge of one shall not be a discharge of the others. It is hereby evinced, that there is no careless use of one general expression to include all these instruments, but that each is designated by its appropriate technical word.
The counsel for the plaintiif in error attempts to support his 'construction by a reference to chapter 151, section 6, of the same session, where it is provided, that where judgment shall be obtained on any bill, bond or promissory note, by an endorsee against the maker and *353 endorsers lointly, the sheriff in whose hands the execu-J , ,, , , , ,. tion may come shall make the money out 01 the property of the maker. It is true this provision seems to CON template that a joint action could be prosecuted against the maker and endorsers of a promissory note, but the opinion of the Legislature, that they had made a law, which in fact had not been enacted, would not have the effect of making it law; nor is a legislative construction of a former act of much weight. It is the business of the legislature to declare what shall be law; it is the province of the court, and not the legislature, to say what is the law. Let the judgment be affirmed.
Judgment affirmed.